OCTOBER AND NOVEMBER TERM, 1884, No. 14.    OCTOBER 27, 1884.

## McAfee *v.* Magee.

1. In an action of ejectment to determine whether a certain frame house was included within the terms of the following devise: "I give and devise to my wife Sarah the house in which I reside, corner of High street and an alley, with the lot whereon it stands and appurtenant to it," the court left it to the jury upon the evidence to determine how the testator regarded it in his life-time, whether he regarded it as one house, and instructed them that if he so regarded it their verdict should be for the devisee. *Held* that this was not error.

2. The Court further instructed the jury that in order to determine how it was regarded by the testator, they were not only to take the evidence of how he acted in regard to it before he made the will, but that they might take any acts of his down to the time of his death. *Held* not to be error.

Before MERCUR, C. J.; GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

Error to the Court of Common Pleas, No. 1, of *Allegheny County.*

Ejectment by Sarah Magee against Patrick McAfee to recover a lot of ground with a house erected thereon, situated in the city of Pittsburgh.

[McAfee *v.* Magee.]

The following facts appeared at the trial, October 19, 1883, before COLLIER, J.:

Both plaintiff and defendant claimed title through the will of John Magee.

John Magee died on June 27, 1881, leaving a will, which contained, *inter alia*, the following clauses:

"I give and devise to my wife Sarah the house in which I reside, corner of High street and an alley, with the lot whereon it stands and appurtenant to it."

"I also devise and bequeath to my wife Sarah all my household furniture and goods and chattels in my present dwelling house."

The residue of his estate was given to his executors in trust for the support of his wife and son. The will was dated May 8, 1877. On June 22, 1881, he made a codicil, in which he directed his executors to invest the sum of $500, and pay it with the accumulated interest to a niece when she should reach her majority.

The lot claimed by the plaintiff was described as follows:

"Beginning at a distance twenty-three feet and six inches from the corner of High street and Denny's alley, and running thence eastwardly along said alley sixteen feet and five inches to a line of property owned by Andrew Hayden; thence running back, preserving the same width sixteen feet and five inches, twenty-two feet and two inches to other property, late of the decedent, and having thereon erected a three story frame dwelling house."

The premises in dispute were a frame house, and lot, fronting on Denny's alley, which leads into High street, bought by the testator in 1848. For a number of years afterwards he lived in this house. In 1854 he built a brick house adjoining at the corner of High street and Denny's alley, fronting on High street.

The evidence disclosed the following facts: At first there was no internal communication between the two buildings. In 1863 or 1864, to accommodate John O'Neill, a tenant, a door was made between the store room of the brick house and the first story of the frame house. O'Neill was for a time tenant of the first story in each house, using the premises for a saloon. After O'Neill left, the first story in each house was sometimes occupied by one tenant, and at other times the rooms were rented separately. The upper stories of the frame house were also rented to tenants. Magee himself never occupied the store room. He lived with his family in the

upper part of the brick house. This was the situation when he made his will May 8, 1877. In June or July, 1880, he made a door between the two houses on the second floor, and occupied the back room in the frame building as a kitchen. This continued till his death. The assessors' books produced at the trial showed that in 1879 and 1880 the houses had been assessed separately.

The defendant offered, *inter alia*, the following points:

*Sixth.* The words of the testator, "corner of High street and an alley," fix and indicate the location of the house devised to plaintiff, and the words "in which I reside," do not increase or diminish the extent of the bequest. The words, the "house in which I reside," will not control the more specific designation used in the will to describe the house devised to plaintiff, and embodied in the words, "corner of High street and an alley," and the latter words must prevail.

*Seventh.* If at the date of the will the frame house was separate from the brick house at the corner High street and the alley, except the door between the store room on the first floor of the brick house and room on the first floor of the frame, and John Magee occupied no part of the frame house as a residence, the frame house does not pass to the plaintiff.

*Eighth.* If the frame house was, at the date of the will, separate from the brick house, except the door connecting the rooms on the first floor of each, that would not make them one house, and the frame house would not be covered by the words at the "corner of High street and an alley."

*Ninth.* The devise to Sarah Magee, not being a general devise, but the devise of a particular thing, to wit, the residence of the testator at the corner of High street and an alley, so far as the devise to Sarah Magee is concerned, the will must be regarded as speaking from its date, and will carry the property as it existed at that time, and not otherwise; and this is not altered by the codicil, subsequently made by the testator.

The Court answered the defendant's and plaintiff's points together as follows:

So far as the foregoing points are answered affirmatively in the general charge, they are affirmed, and so far as they are answered negatively, they are refused.

(Second, third, fourth, and fifth assignments of error.)

The Court charged the jury, *inter alia*, as follows:

"This is an action of ejectment, the plaintiff alleging that the title to the property in question is in her, and that

[McAfee *v.* Magee.]

it is not the property of the trustee, Mr. McAfee, the defendant.

"It is the law of ejectment that the person in possession, no matter how weak his title, can not be turned out unless the plaintiff shows a better title. In this case, no matter how Mr. McAfee got possession, whether forcibly or otherwise, he cannot be turned out unless you find the plaintiff has a better title than his.

"The plaintiff claims title through her husband's will, and the language of it, under which she claims, is this:

'I give and devise to my wife, Sarah, the house in which I reside, corner of High street and the alley, with the lot whereon it stands and appurtenant to it.'

"That by itself would give her the house on the corner of High street, with lot on which it stands and which is appurtenant to it.

'I also devise and bequeath to my wife, Sarah, all my household furniture, and goods and chattels in my present dwelling house.'

"In another clause the testator provides that the trustee shall make the widow an allowance to keep her, and if there is more than will keep her reasonably, in his judgment, decently—that means according to her station in life—the balance shall go to the improvement of his estate.

"The question for you to determine is, what was the house on the corner of High street and the alley? Did it include the frame building, or, as sometimes called, the back building, on the alley?

"If that was included in the 'house on the corner of High street and the alley,' the plaintiff takes it; if it is not included, she does not take it.

"The evidence does not seem to show how much the lot was, whether it included this house, or where it ran to; you are left a little in the dark about it. Whether it was one house is not made clear by the will, but it is perfectly clear that the house she gets must be on that corner, the corner of High street and that alley.

"You will determine whether the two buildings constitute one dwelling from all the facts given in evidence, and circumstances surrounding, the manner of occupation, and how the testator regarded it in his life-time, whether he regarded it as one house, because, if he did, you are able to find that there is sufficient evidence to satisfy your minds that that really was the case, the plaintiff would be entitled to a verdict although part of it was brick and part frame.

[McAfee *v.* Magee.]

[" To determine how it was regarded by Mr. Magee, you are not only to take the evidence of how he acted in regard to it before he made the will, but you may also take any acts of his after he made it, down to the time of his death.]

"The plaintiff contends, that before the will was made, they lived in the old frame, that Mr. Magee's living child was born there. I believe it does not appear (however, you will remember that) that he was living there at the time the brick building was erected. He did build this brick building; the old one above the first floor, at any rate, was frame.

"Before he made the will, in renting the lower part of his house he cut a door through between the two buildings; that a year or so before he died, he cut a door above in the second floor, and took the room adjoining the brick building and turned it into a kitchen. Subsequently he made a codicil to his will, and died.

"From these facts, and others, (I do not pretend to give all of them,) the plaintiff asks you to say that it was clearly in the mind of old John Magee that this was one house, that he so regarded it; in other words, that the frame was nothing but a back building.

"On the part of the defendant, there is pretty strong evidence the other way. It is alleged that the old man did not live in the frame when he built the brick; that he built a separate building; that he rented the old building out, before and after he made the door, to different people as a separate building; that he had a way outside to get to the first story and above; that it was assessed as two separate buildings, and he paid taxes on them as such; that at the time he made the will, he lived in the brick building exclusively.

"If you find, gentlemen, that the acts of the old gentleman, and the circumstances surrounding, show the frame building was one and part of the brick—it was all one building on the corner of High street and the alley—the plaintiff can recover.

"On the other hand, if you find they were separate buildings, you find for the defendant."

October 22, 1883, verdict for the plaintiff, upon which judgment was afterward entered. The defendant thereupon took this writ, assigning for errors, *inter alia*, the answers to his points as above, and the portion of the charge included within brackets.

*A. M. Brown* and *John S. Lambie* for plaintiff in error. "A devise of the house in which I now live," means where

[McAfee v. Magee.]

he resides at date of the will: 1 Jarman, 334 and 335 ; Williams v. Owen, 2 New Reports, 585 ; Hutchinson v. Barrow, 6 H. and Norman, 583 ; Cole v. Scott, 1 McN. and G., 518 ; Webb v. Byng, 1 Kay and Johnson, 580 ; Quinn v. Hardenbrook, 54 N. Y., 83 ; Emuss v. Smith, 2 De Gex and S., 722 ; 1 Redfield on Wills, 380.

It is not necessary that the word "now" be used, any word in the present tense will have the same effect: 1 Jarman, 320 ; Wagstaff v. Wagstaff, 8 Law Reports, (Equity,) 229.

Whenever a testator refers to an actually existing state of things, the language is referential to the date of the will and not to his death.

The words "in which I reside" do not either increase or diminish the extent of the bequest. The devise is not the house in which I reside, but a particular house. It is as though he had made the bequest in these words: "I devise the house at the corner of High street and the alley, where I reside." He might have changed his residence many times after making the will, but the bequest remained unchanged. The intent of the testator can be further learned from the other provisions of his will. He gives to his wife all his furniture, goods, and chattels "in my (his) present dwelling house." Manifestly, the word "present" can only refer to the date of the will. He then creates a residuary estate for the support of his wife and son. His purpose seemed to be to give his wife a furnished home, and then provide for her support. We, therefore, conclude that the Court erred in refusing to charge as requested in the sixth, seventh, eighth, and ninth points of the defendant.

*Breil & Fitzpatrick* for defendant in error.

November 10*th*, 1884.—Per Curiam : This contention arises under a clause in a will in which the testator devised to his wife "the house in which I reside, corner of High street and an alley, with the lot whereon it stands and appurtenant to it." The evidence as to location of the lot described, and the testator's residence was fairly submitted to the jury. They found from the acts of the testator and the surrounding circumstances, that the two buildings were treated and recognized by him as one. It follows they constituted the property which the testator devised to his wife.

Judgment affirmed.